The PEOPLE of the State of
Colorado, Complainant,

v.

Rick CHEW, Attorney–Respondent.

No. 92SA94.

Supreme Court of Colorado,
En Banc.

May 11, 1992.

Linda Donnelly, Disciplinary Counsel and John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Bryan Morgan, Denver, for attorney-respondent.

PER CURIAM.

This attorney discipline case comes to us on a stipulation, agreement, and conditional admission of misconduct entered into between the respondent and the assistant disciplinary counsel. An inquiry panel of the Supreme Court Grievance Committee approved the stipulation and recommended that the respondent be suspended from the practice of law for forty-five days and be assessed the costs of the proceeding. We approve the stipulation.

I.

The respondent was admitted to the bar of this court on January 22, 1981, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). The parties stipulated to the following facts.

A.

In 1987, the respondent was hired by Ray and Shane Bates to represent them in a criminal proceeding in which they were charged with first-degree arson, third-degree arson, conspiracy, and crime of violence. Ray Bates is Shane Bates's father. Ray and Shane Bates purported to waive conflict-free representation in writing, at least through the preliminary hearing. *See Armstrong v. People*, 701 P.2d 17, 19 (Colo.1985); DR 5–105(C) (in situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure). After the prosecution moved to disqualify the respondent, Ray Bates waived all conflicts in order to allow the respondent to continue to represent Shane Bates, and another attorney entered an appearance on behalf of Ray Bates. In a subsequent hearing, the district court denied the prosecutor's renewed motion to disqualify the respondent from representing Shane Bates, holding that Ray and Shane Bates had waived all conflicts.

When the prosecution extended a plea offer to Shane Bates which would have substantially decreased his sentence if he agreed to testify against his father, the court appointed special counsel for the limited purpose of conveying the plea offer to Shane Bates. Ray and Shane Bates eventually entered pleas of guilty. Ray Bates was sentenced to sixteen years in the penitentiary. Shane Bates received a five-year sentence and eight years probation.

As the respondent has admitted, his conduct violated DR 5–105(A) (a lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be affected by the acceptance of the proffered employment, or would be likely to involve the lawyer in representing differing interests, except to the extent permitted by DR 5–105(C)); and DR 5–105(B) (a lawyer shall not continue multiple employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing different interests, except to the extent permitted by DR 5–105(C)). The waivers did not satisfy the first requirement of DR 5–105(C), which is that the lawyer may represent multiple clients only if it is obvious that the lawyer can adequately represent the interest of each client. The respondent could not adequately represent the interests of each client because of the different degrees of culpability between the two defendants, as reflected in the disparate sentences. The respondent's conduct also violated DR 2–110(B)(2) (a lawyer shall withdraw from employment if the lawyer knows or it is obvious that continued employment will violate a disciplinary rule).

### B.

The respondent also represented James and Gibb Gibson, another father and son, in a criminal case involving charges of second-degree assault, felony menacing, and kidnapping. Before the respondent was retained, Gibb Gibson made a post-arrest confession to the assault which implicated his father as the aggressor. The respondent did not object when the prosecutor moved to join the two cases and to allow the use of the son's confession in the father's case. The respondent obtained a written waiver from James Gibson stating that Gibson had been advised that his son's confession might affect his decision to testify in the case, but that James Gibson nevertheless desired that the cases be consolidated. Before trial, the respondent arranged for another attorney to represent Gibb Gibson. At the joint trial, Gibb Gibson was convicted of third-degree assault and acquitted of felony menacing. James Gibson was convicted of both assault and menacing.

As in his representation of both Ray and Shane Bates, the respondent has admitted that his multiple representation of James and Gibb Gibson violated DR 5–105(A) and (B), and DR 2–110(B)(2).

### C.

The respondent has also stipulated to numerous instances of commingling of personal funds and client trust funds, contrary to DR 9–102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located), and DR 9–102(B)(3) (a lawyer shall not fail to maintain complete records of client property in the possession of the lawyer and to render appropriate accounts to the client regarding the property). In the stipulation, the assistant disciplinary counsel agreed that the respondent did not convert any client funds and that the commingling was unintentional. Moreover, no client lost any funds as a result of the commingling or complained of the respondent's handling of the funds.

### II.

The inquiry panel approved the stipulation, agreement, and conditional admission of misconduct and, following the analysis of discipline provided by the respondent and assistant disciplinary counsel, recommended that the respondent be suspended for forty-five days. The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*) provides that in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential

injury to a client." *ABA Standards* 4.32. On the other hand, public censure is warranted if the lawyer is at most "negligent in determining ... whether the representation will adversely affect another client, and causes injury or potential injury to a client." *Id.* at 4.33. In the stipulation, the assistant disciplinary counsel and the respondent have characterized the respondent's mental state in the multiple representations as "negligent" rather than "knowing." Public censure is also appropriate when a lawyer negligently commingles client trust funds and personal funds and fails to provide appropriate accountings, causing at least potential injury to a client. *Id.* at 4.13. The respondent received a public reprimand from the Oklahoma Supreme Court in 1977, but this prior offense is too remote to be of great significance.

Because this case does present a pattern of misconduct and multiple offenses which are significant factors in aggravation, *id.* at 9.22(c), (d), we believe that at least a short period of suspension is warranted. The respondent has agreed to abide by certain financial monitoring conditions attached to the stipulation. We conclude that a forty-five day suspension is appropriate in conjunction with these conditions. Accordingly, we accept the stipulation, agreement, and conditional admission of misconduct.

### III.

It is hereby ordered that Rick Chew be suspended from the practice of law for forty-five days, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that Chew comply with the financial monitoring conditions attached to the stipulation. It is further ordered that Chew pay the costs of this proceeding in the amount of $487.52 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.