The PEOPLE of the State of
Colorado, Complainant

v.

John B. RISHEL, III, Respondent.

Nos. 01PDJ051, 01PDJ064.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

July 8, 2002.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, ROBERT A. MILLMAN and DANIEL A. VIGIL.

## REPORT, DECISION AND IMPOSITION OF SANCTION

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

A trial was held on February 4, 2002, before a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Robert A. Millman and Daniel A. Vigil, both members of the bar. Deborah D. Jones, Assistant Attorney Regulation Counsel represented the People of the State of Colorado (the "People"). John B. Rishel ("Rishel"), the respondent, did not appear either in person or by counsel.

The Complaint in Case No. 01PDJ051 was filed on May 1, 2001, and amended on May 15, 2001. Rishel filed an Answer to the Amended Complaint on June 28, 2001. The Complaint in Case No. 01PDJ064 was filed

on June 13, 2001. Rishel filed an Answer thereto on July 12, 2001. The two matters were consolidated by motion of the People on July 16, 2001.

At the trial, the People presented evidence from Joanne Baum McCarthy, Ph.D. ("McCarthy") and Thomas M. Dunn ("Dunn"). Exhibits 1 through 6 were offered by the People and admitted into evidence. The Hearing Board considered the People's argument, the exhibits admitted, assessed the testimony of the witnesses and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

John B. Rishel, III has taken and subscribed to the oath of admission, was admitted to the bar of the Supreme Court on May 31, 1984 and is registered upon the official records of this court, registration number 13806. Rishel is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).[1]

This consolidated matter arises from Rishel's involvement with a group of individuals who pooled funds to purchase Rockies baseball team season tickets for division among the group. In the first matter, Joann Baum–McCarthy and her husband (the "McCarthys") began participating in a ticket pool with Rishel in approximately 1996. In January 2000, the McCarthys spoke with Rishel regarding the purchase of tickets for the upcoming season. Rishel informed them that their share of the cost would be $1,176.00, and asked them to pay immediately by cashier's check rather than the personal check they had used in the past. They tendered payment by cashier's check for the specified amount on January 21, 2000, and Rishel cashed the check on January 27, 2000. Thereafter, the McCarthys heard nothing from Rishel regarding the tickets. They contacted the Rockies' ticket office and learned that the tickets had not been purchased. The McCarthys repeatedly tried to contact Rishel, and when they could not

reach him, they contacted an attorney. The attorney wrote to Rishel requesting a refund in April 2000. Rishel did not respond.

The second matter in this consolidated proceeding involved another of the ticket pool participants, Thomas M. Dunn ("Dunn"). In late 1998 and early 1999, Rishel collected Dunn's funds in the amount of $1,105.76 to purchase his share of the tickets. Without Dunn's knowledge or permission, Rishel distributed Dunn's tickets to another purchaser. Dunn attempted to reach Rishel, leaving several messages and asking another individual involved in the ticket pool to contact Rishel on his behalf, but Rishel did not return the calls. In August 1999, Dunn sent a demand letter via certified and first class mail to Rishel requesting that the funds be returned to him immediately. Rishel did not respond.

In June 2000, Rishel filed for personal bankruptcy protection. He listed Dunn and the McCarthys as unsecured, nonpriority creditors, Dunn with a claim of $1,000 and the McCarthys with a claim of $1,176.00. He provided notice of the bankruptcy proceeding to the McCarthys' attorney. As of June 6, 2000, the date Rishel filed for bankruptcy protection, he had no funds in his checking account, and claimed only twenty dollars as cash on hand. Rishel therefore depleted the funds belonging to Dunn and the McCarthys prior to June 6, 2000.

## II. CONCLUSIONS OF LAW

■ Rishel obtained funds belonging to third parties in the amount of $2,281.76. Dunn and the McCarthys authorized Rishel to utilize the funds solely to purchase baseball season tickets on their behalf. Rishel knowingly maintained control over the funds despite the parties' repeated attempts over a significant period of time to contact him. He continued to maintain control over their funds after they withdrew authorization and demanded a refund. Rishel admitted in his bankruptcy filing in June 2000 that he no longer maintained either the Dunn or

---

1. At the time of this proceeding Rishel was suspended from the practice of law for a period of one year and one day pursuant to the sanction imposed by the Supreme Court in *People v. Rishel,* 956 P.2d 542 (Colo.1998). *See In re C de*

*Baca,* 11 P.3d 426, 430 (Colo.2000)(holding that a suspended lawyer remains subject to the disciplinary jurisdiction of the court for acts committed while suspended).

McCarthy funds. Rishel knew that the funds provided to him by Dunn and the McCarthys were not his, were intended to be used for a specific purpose, and he used the funds for a purpose other than that authorized by the third parties. Rishel therefore knowingly converted the funds in violation of Colo. RPC 8.4(c)(it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

■ Rishel's Answer alleges that he did not form the intent to permanently deprive Dunn and the McCarthys of their funds. To find knowing misappropriation under Colo. RPC 8.4(c), "the intent to permanently deprive another of property is not an element of knowing misappropriation for lawyer disciplinary purposes." *In re Thompson*, 991 P.2d 820, 823 (Colo.1999). Misappropriation includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *People v. Varallo*, 913 P.2d 1, 11, (Colo.1996), *citing In re Wilson*, 81 N.J. 451, 409 A.2d 1153 (1979).

■ Knowing conversion by an attorney of funds belonging to a third party falls within the scope of Colo. RPC 8.4(c), regardless whether the conduct arises from an attorney/client relationship or, as in the present case, an attorney is entrusted with funds belonging to third parties, utilizes the funds without their authorization for his own purposes, and fails to refund the amounts they entrusted to him. *See People v. Anderson*, No. 99PDJ033 (consolidated with 99PDJ066 and 99PDJ126) slip op. at 12 (Colo. PDJ June 21, 2000)(attorney violated Colo. RPC 8.4(c) when he committed theft by forging a check from his law firm's operating account, cashing the check, and using the funds for his own benefit); *People v. Motsenbocker*, 926

P.2d 576, 577 (Colo.1996)(attorney misappropriated bar association funds while serving as treasurer); *People v. Finesilver*, 826 P.2d 1256, 1257 (Colo.1992)(attorney converted funds belonging to third party title company consisting of monies paid by clients of the attorney's law firm for services provided by the title company in the course of foreclosures handled by the law firm); *People v. Lujan*, 890 P.2d 109, 111 (Colo.1995)(attorney violated predecessor rule to Colo. RPC 8.4(c), Code of Prof. Resp., DR 1–102(A)(4), by using the law firm's credit card and the money obtained from the fraudulent billings for her personal use).

■ Both Complaints also allege that Rishel's conduct violated Colo. RPC 8.4(b)(it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects) for which C.R.C.P. 251.5(b) provides grounds for discipline.[2] The Colo. RPC 8.4(b) violations set forth in the Complaints were based on the allegation that Rishel's retention of funds constituted theft pursuant to § 18–4–401(1)(b), 6 C.R.S. (2000). That statute provides:

A person commits theft when he knowingly[3] obtains or exercises control over anything of value of another without authorization, or by threat or deception, and knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit.

With regard to both the Dunn and McCarthy funds, both parties initially authorized Rishel to obtain control over the funds for the express purpose of purchasing baseball season tickets. After Rishel failed to purchase the tickets, both Dunn and the McCar-

---

**2.** C.R.C.P. 251.5 provides that misconduct by an attorney ... including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship: (b) Any act or omission which violates the criminal laws of this state or any other state, or of the United States; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings.

**3.** A person acts " 'knowingly' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such a nature or that such circumstance exists." A person acts "knowingly" or "willfully" with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result. § 18–1–501(6), 6, C.R.S. (2001).

thys attempted to reach Rishel to no avail, and thereafter withdrew their authorization.

■ To constitute theft pursuant to § 18–4–401(1)(b), "[c]ontrol of the property need not be unauthorized from the outset." *People v. Treat*, 193 Colo. 570, 568 P.2d 473, 476 (1977)(holding that although authorization was initially given for property, exercise of that control continued to be authorized only because the defendant deceived the rightful owner of the property into believing that a legitimate use was being made of the property). "It is sufficient [for purposes of the statute] that the intended use of such thing be inconsistent with the owner's use or benefit." *Id.*

■ Rishel contends that he never intended to permanently deprive either Dunn or the McCarthys of their funds. "[T]he crime of theft may be committed when the offender ... even though not intending to deprive the other person permanently of the use or benefit of the property, nonetheless knowingly uses the property in such manner as to deprive the other person permanently of the use or benefit of the property." *People v. Anderson* 773 P.2d 542, 545 (Colo. 1989). "[T]he "knowingly using" element of mental culpability in subsection 18–4–401(1)(b) does not require a conscious objective to deprive another person of the use or benefit of the ... funds, but instead requires the offender to be aware that his manner of using the ... funds is practically certain to result in depriving another person of the use or benefit of the funds." *Id.*

In this consolidated matter, the facts established that Rishel knowingly obtained funds from both Dunn and the McCarthys and used those funds in a manner not authorized by the rightful owners. Moreover, it may be inferred from Rishel's demand that funds be paid by cashier's check rather than historically acceptable personal checks, his failure to purchase the McCarthy tickets, his delivery of the Dunn tickets to a third party, his failure to respond to communication efforts from both Dunn and the McCarthys,

and his failure to respond to demands for refunds that Rishel knew that his use of the Dunn and McCarthy funds was practically certain to result in permanently depriving both Dunn and the McCarthys of their property.

To establish grounds for discipline pursuant to C.R.C.P. 251.5(d) and a violation of Colo. RPC 8.4(b) requires either evidence of conviction of a criminal act or, in the absence of a conviction, evidentiary proof sufficient to find by clear and convincing evidence each element of the alleged criminal act.[4] The Hearing Board finds that the evidence presented in this consolidated matter meets that standard in both the Dunn and McCarthy transactions.

■ The Complaint in the McCarthy matter also alleges that Rishel violated Colo. RPC 1.15(b)(upon receiving funds in which a ... third person has an interest, a lawyer shall, promptly or otherwise as permitted by law ... deliver to the third person funds or other property that the ... third person is entitled to receive). The facts alleged in the McCarthy case establish that Rishel received property belonging to the McCarthys and failed to timely deliver the tickets for which the funds were intended or return the funds. Consequently, Rishel's conduct also violated Colo. RPC 1.15(b).[5] *See People v. Garrow*, 35 P.3d 652, 655 (Colo. OPDJ 2001)(holding that the receipt of property by a lawyer in which a ... third party has an interest triggers the operation of Colo. RPC 1.15(b) ... [and] once triggered, require[s] the attorney to return property of ... another in a timely fashion in accordance with law); *People v. Vincent* 35 P.3d 140, 143 (Colo. OPDJ 1999)(attorney's failure to promptly pay third-party vendors' bills constituted a violation of Colo. RPC 1.15(b)); *People v. Egbune*, No. GC98A13 (Colo. PDJ 1999) Colo. Discipl. LEXIS 78, *9 (attorney disbursed all settlement proceeds to client less amount he retained for himself, after having been placed on notice that prior attorney claimed an in-

---

4. *See* C.R.C.P. 251.18(d)(stating that disciplinary violations require proof by clear and convincing evidence.)

5. The Complaint in the Dunn matter did not allege a violation of Colo. RPC 1.15(b).

terest in any settlement funds in violation of Colo. RPC 1.15(b)).

## III. ANALYSIS OF SANCTION

 In both the Dunn and McCarthy matters, Rishel engaged in knowing conversion by obtaining funds from third parties for a stated purpose, failing to utilize the funds for that purpose, retaining the funds for an extended period of time after the third parties had withdrawn authorization, and failing to refund the amounts paid to the third parties despite their demand that he do so. The presumptive sanction for knowing conversion of the property of another is disbarment. *People v. Dice*, 947 P.2d 339, 340 (Colo.1997)(holding that a lawyer's knowing misappropriation of funds, whether belonging to a client or third party, warrants disbarment except in the presence of extraordinary factors of mitigation); *Motsenbocker*, 926 P.2d at 577 (attorney disbarred for knowing misappropriation of bar association funds).

 Colo. RPC 8.4(c) applies equally to transactions outside the practice of law where, as in the present case, an attorney accepts funds from third parties for a stated purpose, knowingly fails to use the funds for that purpose, withholds the funds after their authorization is withdrawn, and ultimately fails to refund the amount to the parties. *See People v. Wiedman* 36 P.3d 785, 788 (Colo. OPDJ 1999)(holding that a lawyer's knowing misappropriation of funds, whether belonging to a client or a third party, warrants disbarment except in the presence of extraordinary factors in mitigation). *See also Finesilver, supra, Attorney Grievance Commission of Maryland v. Ezrin*, 312 Md. 603, 541 A.2d 966 (1988).

 Theft of funds also warrants the sanction of disbarment, regardless of whether the funds belonged to a third party or to a client.[6] *See Anderson*, No. 99PDJ033 (Colo.

PDJ June 21, 2000) *supra*. The fact that Rishel was not criminally charged or convicted of a criminal offense which he is alleged to have committed is not important for purposes of a disciplinary proceeding. *People v. Odom*, 941 P.2d 919 (Colo.1997).

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 5.11 provides:

Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft. . . .

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

Rishel's conduct meets the criteria under both ABA *Standards* 5.11(a) and (b).

Pursuant to ABA *Standards* 9.22 and 9.32 respectively, the Hearing Board considered aggravating and mitigating factors to determine the appropriate sanction. Rishel failed to appear at the trial in this matter; accordingly no mitigating factors were presented. The following aggravating factors were presented: Rishel engaged in bad faith obstruction of the disciplinary process by failing to fully participate in these proceedings, *see id.* at 9.22(e);[7] Rishel engaged in multiple offenses, *see id.* at 9.22(d); Rishel refused to acknowledge his wrongful conduct, *see id.* at 9.22(g), and he had indifference to making restitution, *see id.* at 9.22(j). Rishel also had substantial experience in the practice of law: he has been licensed to practice law in the

---

6. The violation of Colo. RPC 8.4(b) is based upon the underlying crime of theft, and constitutes a separate and independent basis for imposing the sanction of disbarment. Absent our conclusion that Rishel violated Colo. RPC 8.4(b), the sanction imposed would still be disbarment based upon the finding of knowing conversion.

7. The People moved for sanctions on January 11, 2002, after Rishel failed to provide responses to discovery despite the PDJ entering an Order requiring him to do so. The PDJ denied the People's request that Rishel's Answers be stricken, and instead ordered that he be limited in the sanctions hearing to his own testimony and the ability to cross-examine the People's witnesses.

State of Colorado since May 31, 1984. *See id.* at 9.22(i).

Finally, Rishel had prior disciplinary offenses, *see id.* at 9.22(a). In *People v. Rishel,* 956 P.2d 542 (Colo.1998), the Supreme Court suspended Rishel for one year and one day in a default proceeding for neglecting a legal matter in one case, and in two cases, failing to keep the clients reasonably informed about the status of matter, failing to promptly refund the clients' funds upon request, and failing to take reasonable steps to protect the clients' interest upon termination.

In the absence of substantial mitigating factors, the Hearing Board concludes that disbarment is the appropriate sanction for the conduct giving rise to this consolidated matter.

## IV. ORDER

It is therefore ORDERED:

1. JOHN B. RISHEL, III, attorney registration 13806 is DISBARRED thirty-one days from the date of this Order.

2. Prior to readmission to the practice of law, Rishel must establish that he has refunded or paid restitution within twelve (12) months from the date of this Order to:

 A. Thomas Dunn in the sum of $1,105.76, plus interest at the statutory rate from January 31, 1999;

 B. The McCarthys in the sum of $1,176.00, plus interest at the statutory rate from January 31, 2000.

3. Rishel is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.